<u>Not for Publication</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOCELYN MANSHIP and JULIE WEISMAN,<br>　　　　*Plaintiffs,*<br>v.<br>JASON STEIN, HERBERT STEIN, and<br>HARRIS STEIN,<br>　　　　*Defendants.* | Civil Action No. 2:21-cv-10389<br><br>**<u>OPINION</u>** |

<u>**John Michael Vazquez, U.S.D.J.**</u>

　　　　This case concerns the alleged breach of an indemnification agreement. Currently pending is a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by Defendants Jason Stein, Herbert ("Herb") Stein, and Harris Stein (collectively "the Steins" or "Defendants"). D.E. 9. The Court has considered the submissions in support of and opposed to the motion,[1] and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1(b). For the reasons given herein, Defendants' motion is **DENIED**.

　　**I.**　　**BACKGROUND**

　　　　Plaintiffs are Jocelyn Manship and Julie Weisman, who live in New Jersey. D.E. 1 ("Compl.") ¶¶ 2-3. Plaintiffs are the owners of a company, Elan Chemical, Inc. ("Elan"). D.E. 12-1 ("Manship Decl.") ¶¶ 1-3. Plaintiffs received from their fathers their ownership shares of Elan, which has a facility in Newark, New Jersey. *Id.* ¶ 3.

---

[1] Defendants' brief in support of the motion, D.E. 9-5, will be referred to as "D. Br." Plaintiffs' brief in opposition, D.E. 12, will be referred to as "Opp'n." Defendants' reply, D.E. 13, will be referred to as "D. Reply."

Defendant Herb Stein[2] approached Plaintiffs' fathers in 1986, asking to work at Elan making flavors for use in food and drink. *Id.* ¶ 4. Plaintiffs' fathers instead proposed that Herb start his own company and allowed him to operate it on Elan's land. *Id.* Herb agreed and each of Plaintiffs' fathers became a 25% owner of the new company. *Id.* ¶ 5. The new company was named "Natural Flavors," a New York corporation with its principal place of business in Newark. *Id.*; Compl. ¶ 10. Natural Flavors operated on Elan's Newark property. Manship Decl. ¶ 6. Plaintiffs also received their fathers' ownership shares of Natural Flavors. *Id.* ¶ 7.

Natural Flavors was operated by Herb and his sons. *Id.* ¶ 8. Herb served as the company's president and was responsible for its daily operations. *Id.* ¶ 9. Over time, Herb's sons, Harris and Jason, became more involved with Natural Flavors. A 2013 document showed that all three were part owners of Natural Flavors: Herb owned 25% of the company, and Harris and Jason each owned 12.5%. D.E. 12-1 at 18. Harris Stein is a resident of New York. D.E. 9-2 ¶ 2. Harris joined the company in 1993, working fulltime onsite as a flavorist for fifteen years. Manship Decl. ¶ 10. Jason Stein joined Natural Flavors in 1994. *Id.* ¶¶ 14-15. After a stint on the West Coast, during which time Jason worked for Natural Flavors remotely, Jason moved back to the East Coast, and resumed fulltime work at Natural Flavors until January of 2019. *Id.* ¶ 15. Over time, Jason took over for Herb as to the company's daily operations and took on the role of Executive Vice President. *See id.* ¶ 16. Several years ago, Jason began to spend "a week or two" in Hawaii from time to time but continued to run the corporation remotely. *Id.* Jason avers that he has been a resident of Hawaii since 2018. D.E. 9-4 ("Jason Cert.") ¶ 3.

---

[2] Because the Defendants have the same last name, the Court follows the parties and uses the Defendants' first names. The parties refer to Herbert Stein as "Herb."

In 2013, at Jason's suggestion, the Steins began exploring the possibility of selling Natural Flavors. Compl. ¶ 11. To that end, Jason engaged Plaintiffs in about six meetings at Elan's office. Manship Decl. ¶ 17. The Steins and Plaintiffs agreed to a division of proceeds from a sale, with the Steins responsible for marketing and selling the company. *Id.* The Steins and Plaintiffs executed a Shareholders Letter of Understanding ("the Letter") memorializing their agreement. *Id.*; D.E. 12-1 at 10.

In 2017, through a broker, the Steins secured a buyer, Firmenich, Inc ("Firmenich"). Manship Decl. ¶¶ 18-20. Firmenich is incorporated in Delaware and is headquartered in New Jersey. D.E. 12-1 at 28; Manship Decl. ¶ 20. Both Plaintiffs and the Steins retained New Jersey counsel for the transaction. *Id.* ¶ 21. As part of the transaction, Jason Stein and counsel negotiated an Asset Purchase Agreement ("APA") with Firmenich. *Id.* ¶ 22; D.E. 17-2. The APA is governed by Delaware law and indicates that the parties will litigate any claim as to the APA in Delaware. *Id.* at 83-85. The Steins also executed a Manufacturing Agreement and a Temporary Staffing Agreement with Firmenich. *See* D.E. 12-4 ("Lorell Decl.") ¶ 17.

Firmenich required Plaintiffs, as shareholders of Natural Flavors, to sign the APA and attest to the truthfulness of its representations. Manship Decl. ¶ 22. Plaintiffs were hesitant to sign given their passive ownership of the company but ultimately did so. *Id.* ¶¶ 22-23. Plaintiffs also executed a side agreement with the Steins in light of Firmenich's requirement that Elan abide by restrictive covenants. *Id.* ¶ 24. Jason continued to work at Natural Flavors as a consultant for Firmenich after the sale. *Id.* ¶ 25.

After the sale, Firmenich sued Plaintiffs and the Steins in Delaware state court ("the Delaware Action"), alleging, among other things, fraudulent representations in the APA that Natural Flavors's products were all-natural or organic when they were not. *Id.* ¶ 27. Firmenich

asserted, among other things, that Jason Stein had created fake records at Natural Flavors' Newark facility. D.E. 12-1 at 79. Firmenich's demanded over $100 million. Lorell Decl. ¶ 11.

After Firmenich filed the Delaware Action, Plaintiffs' counsel communicated with the Steins' New Jersey attorneys. *Id.* ¶¶ 4-5. The Steins' counsel informed Plaintiffs' counsel that negotiations were underway to settle claims against the Plaintiffs as well as the Steins, and assured Plaintiffs' counsel that only the Steins would pay any settlement. *Id.* ¶ 5. Plaintiffs' counsel informed the Steins' counsel that if the case was not settled, Plaintiffs would file crossclaims against the Steins because Plaintiffs were not responsible for the fraudulent behavior that precipitated the litigation. *Id.* ¶ 6. In Plaintiffs' counsel's view, the only way to stave off such crossclaims would be for the Steins to indemnify Plaintiffs in a formal and unequivocal agreement. *Id.* The Steins' counsel responded that although he believed that his clients had already agreed to indemnify Plaintiffs in the Letter or another agreement, the Steins would agree to execute a formal indemnification agreement. *Id.* ¶¶ 5-6.

Accordingly, through their respective New Jersey counsel, the parties executed the "Indemnification Agreement." *Id.* ¶ 7. Plaintiff's counsel prepared a draft of the agreement. *Id.* After making minor changes, the Steins' counsel sent the final Indemnification Agreement to the Steins in their home states. *Id.* The Steins signed the Indemnification Agreement in their home states in November of 2019 and returned it to their attorneys in New Jersey. D.E. 9-2 ¶13; D.E. 9-3 ¶ 13; Jason Cert. ¶ 12; D.E. 1 at 13-15.

Paragraph two of the Indemnification Agreement provides that Natural Flavors and the Steins

> agree, jointly and severally, to indemnity [sic], hold harmless and defend [Plaintiffs] and Elan from any and all claims, liabilities, costs, damages, expenses and other losses arising or directly or

4

> indirectly out of or relating in any way to (a) the sale of NFI's[3] assets to Firmenich, (b) the APA [or the Manufacturing and Temporary Staffing Agreements], (c) the allegations contained in or hereinafter included in the Delaware Action, (d) any and all claims by any other parties arising out of, directly or indirectly, the operations of NFI before the sale of its assets to Firmenich or subsequent to such sale, (e) the actions or omissions, intentional or otherwise, of the Stein Family Members and/or NFI's employees at any time, and/or (f) any claims by other parties arising out or relating to the purchase of goods or materials from NFI.

D.E. 1 at 11. The Indemnification Agreement further provides Plaintiffs may recover any expense incurred in enforcing it and that it is governed by New York law. *Id.* at 11, 13.

Firmenich's claims for breach of the Manufacturing Agreement and the Temporary Staffing Agreement were dismissed from the Delaware Action because those agreements had New Jersey forum-selection clauses. Lorell Decl. ¶ 17. Firmenich refiled those claims as a separate action in New Jersey state court in 2020. *Id.* ¶ 18.

After the Indemnification Agreement was in place, the parties agreed to mediate the Delaware Action. Manship Decl. ¶¶ 29-31. Of the parties to the instant matter, only Jason Stein participated in the mediation, and he did so remotely from Hawaii. Jason Cert. ¶ 13. Because one of Firmenich's insurance carriers demanded that all defendants in the Delaware Action contribute to the settlement, Plaintiffs agreed to pay $500,000 towards the settlement. Manship Decl. ¶¶ 32-33; Lorell Decl. ¶¶ 12-15. Once Plaintiffs contributed to the settlement, both the Delaware Action and the parallel case in New Jersey state court were settled in principle. Manship Decl. ¶ 35; Lorell Decl. ¶¶ 16, 18. The Delaware Action formally settled on March 4, 2021. Compl. ¶ 26.

---

[3] The Indemnification Agreement refers to Natural Flavors as "NFI" and the Steins as "the Stein Family Members." D.E. 1 at 10.

On March 17, 2021, Plaintiffs demanded that pursuant to the Indemnification Agreement, the Steins pay them for their contribution to the settlement along with incurred fees and costs. *Id.* ¶ 27. Plaintiffs' demand totaled $820,793. *Id.* The Steins refused. *Id.* ¶ 28.

Plaintiffs filed the Complaint on April 28, 2021. Compl. The Complaint brings a single claim for breach of contract, alleging that the Steins breached the Indemnification Agreement. Compl. ¶¶ 29-35. Defendants then filed the instant motion to dismiss. D.E. 9.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) empowers a party to move to dismiss for "lack of personal jurisdiction[.]" Fed. R. Civ. P. 12(b)(2). In such a motion to dismiss, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction[.]" *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 113 n.5 (3d Cir. 2020). Initially, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.* Yet, in reviewing the evidence, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Laurel Gardens,* 948 F.3d at 113 n.5 (quoting *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

There are numerous ways in which a plaintiff can demonstrate personal jurisdiction, including waiver, consent, in-state service on an individual, general jurisdiction, and specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)

(discussing general and specific jurisdiction); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-97 (1991) (regarding consent via a forum selection clause); *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 628 (1990) (regarding in-state service); *In re Asbestos Prods. Liab. Litig.* (*No. VI*), 921 F.3d 98, 104-05 (3d Cir. 2019) (regarding waiver); *Jasper v. Bexar Cnty. Adult Det. Ctr.*, 332 F. App'x 718, 719 (3d Cir. 1999) (regarding consent).

This matter primarily concerns specific (or case-linked) jurisdiction although Plaintiffs also assert general (or all-purpose) jurisdiction. *Ford Motor Co. v. Montana Eighth Judicial District Court*, -- U.S. --, 141 S. Ct. 1017, 1024 (2021) (citation omitted). Specific jurisdiction focuses on the "relationship among the defendant, the forum, and the litigation." *Id.* at 1029 (internal quotation marks and citation omitted). The Court discusses these different doctrines in the analysis section below.

### III. ANALYSIS

#### A. Specific Personal Jurisdiction

Plaintiffs first argue that the Court has specific jurisdiction over their breach of contract claim. Opp'n at 14-23. Defendants maintain that the Court cannot exercise specific personal jurisdiction over them because New Jersey is unconnected to the current suit. D. Br. at 7. Plaintiffs counter that through counsel in New Jersey, the Steins negotiated and finalized the Indemnification Agreement, which obligates them to indemnify the New Jersey Plaintiffs for harm suffered on account of Defendants' conduct in New Jersey in connection with the sale of a New Jersey-based business to another business with headquarters in New Jersey. Opp'n at 16. By doing so, Plaintiffs contend, it was foreseeable to the Steins that they would be haled into court in New Jersey. *Id.* at 16-17.

As to specific personal jurisdiction, a federal court "engages in a two-step inquiry to determine whether it may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction," and (2) "if so, [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment. *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)); *see also* Fed. R. Civ. P. 4(k)(1)(A) (indicating that service "establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction[4] in the state where the district court is located."). "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Id.* (citing *IMO Industries*, 155 F.3d at 259). Accordingly, the two steps are collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted).

In the seminal case of *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945), the Supreme Court held that personal jurisdiction depends on a defendant's having such "minimum contacts" with the forum State such that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." Once a plaintiff demonstrates a *prima facie* case of personal jurisdiction by establishing minimum contacts and that the plaintiff's claim arises out or relates to those contacts,

---

[4] General jurisdiction as used in Rule 4(k) refers to subject-matter jurisdiction rather than personal jurisdiction.

the burden shifts to the defendant. In fact, once minimum contacts have been shown, jurisdiction is "presumptively constitutional." *O'Connor*, 496 F.3d at 324. A defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).

As to minimum contacts, a defendant must purposefully avail itself of the privilege of conducting activities within the forum state. *Burger King Corp.*, 471 U.S. at 475, *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "[R]andom, isolated, or fortuitous" contacts are insufficient. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). A defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant, however, need not physically enter a forum state to be subject to the state's personal jurisdiction. *Burger King*, 471 U.S. at 476. "A nonresident's physical presence within the territorial jurisdiction of the court is not required[.]" *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Indeed, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King*, 471 U.S. at 475 n.18 (quoting *McGee Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

The Third Circuit has instructed that in cases where a party seeks to invoke specific jurisdiction to adjudicate a breach of contract claim, courts are to consider the totality of the circumstances. *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). "A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum[.]'" *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478). Instead, "[i]n determining whether personal jurisdiction

can be established in connection with a breach of contract claim, the court 'must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing.'" *Knierim v. Siemens Corp.*, No. 06-4935, 2008 WL 906244, at *7 (D.N.J. March 31, 2008) (quoting *Remick*, 238 F.3d at 256).

The Court finds that it has specific personal jurisdiction over Defendants. Taking Plaintiffs' facts as true, *Laurel Gardens,* 948 F.3d at 113 n.5, the Steins used counsel in New Jersey to negotiate and finalize the Indemnification Agreement. Lorell Decl. ¶¶ 5-7. "Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction[.]" *Grand Entm't Grp.*, 988 F.2d at 483; *see also Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) ("Agency relationships, we have recognized, may be relevant to the existence of specific jurisdiction.") (emphasis omitted); *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n*, 312 F.3d 833, 845 (7th Cir. 2002) ("The actions of Ogdon's attorneys on his behalf in Indiana are attributable to Ogdon for the purposes of personal jurisdiction analysis.").

Defendants reply that merely executing a contract with Plaintiffs, New Jersey residents, does not subject them to jurisdiction in New Jersey, and rely on *Pfundstein v. Omnicom Group, Inc.*, 666 A.2d 1013 (N.J. Super. Ct. App. Div. 1995). In *Pfundstein,* a New Jersey plaintiff, a entered into an employment agreement and a corporation that was the predecessor of the defendant—both New York corporations. *Id.* at 1014. The parties negotiated and executed the agreement in New York, and it was governed by New York law. *Id.* A year later, the plaintiff and the company executed a severance agreement, that was also negotiated in New York and was governed by New York law. *Id.* The plaintiff signed a copy of the severance agreement in New Jersey and mailed it to the defendant. *Id.* The parties later entered into a salary continuation

10

agreement. *Id.* The parties negotiated the agreement via mail and phone from their home states. *Id.*

The plaintiff then sued the defendant in New Jersey for breach of the severance agreement. *Id.* The Appellate Division held that New Jersey state courts did not have specific personal jurisdiction. *Id.* at 1016. The *Pfundstein* court acknowledged that the plaintiff invoked the salary continuation agreement to shore up his jurisdictional argument but found that the relevant mail and telephone communications did not support New Jersey courts' specific jurisdiction. *Id.* The court in *Pfundstein* observed that the salary continuation agreement "is connected to New Jersey only by the interstate phone and mail communications which led up to it. Those communications are insufficient to warrant the exercise of specific jurisdiction." *Id. Pfundstein* is a decision of the New Jersey Appellate Division and is not binding on this Court. But, assuming that *Pfundstein* was correctly decided,[5] the circumstances here are materially different. The Steins negotiated the Indemnification Agreement in New Jersey, through New Jersey counsel, to stave off potential claims from New Jersey parties that would have arisen out of conduct that the Steins engaged in in New Jersey. Those contacts are not random or fortuitous.

The Steins argue in their reply that their extensive history of owning and operating Natural Flavors and their individual ownership of shares in the corporation are irrelevant to the analysis.

---

[5] The Court does not necessarily agree with the *Pfundstein* court's reasoning. There, the Appellate Division stated that the salary continuation agreement "plainly was not an attempt by Omnicom to tap an interstate market or to avail itself of the privilege of doing business here." 666 A.2d at 1016. This remark may be pertinent if the plaintiff had sued the defendant over the defendant's business operations (or lack thereof) in New Jersey. But the plaintiff had not. Instead, the plaintiff had sued based on an agreement that the defendant intentionally sent to the plaintiff in New Jersey. In other words, the breach of contract action had nothing to do with the defendant's intent to otherwise do business in New Jersey. Other facts may also have been relevant, such as whether Omnicom mailed (or wired) the salary continuation payments to the plaintiff in New Jersey. *Grand Entm't Grp.*, 988 F.2d at 482 ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.").

11

D. Reply at 5-8. They argue that those contacts were in their corporate, not their personal capacities, and that such contacts cannot support personal jurisdiction over them as individuals. *Id.* at 5-6 (discussing *MoneyGram Payment Sys., Inc. v. Consorico Oriental, S.A.*, 65 F. App'x 844 (3d Cir. 2003)).

In *MoneyGram*, the plaintiff sued both the lead defendant, Consorico, and two of its owners and officers, Roberto Lopez and Freddie Lopez. *Id.* at 845, 850. The officers were citizens of the Dominican Republic who had traveled to New Jersey as corporate agents of Consorico and opened bank accounts for Consorico in New Jersey so that Consorico could do business in New Jersey with another business located there. *Id.* at 850. The individuals also, as corporate officers, signed an agreement that provided that any dispute between the plaintiff and Consorico would be litigated or arbitrated in New York. *Id.* at 845, 849. The Third Circuit held that the District of New Jersey did not have jurisdiction over the Lopezes. *Id.* at 849. After agreeing that the Lopezes had signed the agreement only in their corporate, and not individual capacities, the Third Circuit noted that when they traveled to New Jersey, they did so on Consorico's business, not on their own. *Id.* at 849-50. The Third Circuit reiterated "that 'jurisdiction over ... [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction in' a particular forum." *Id.* at 850 (alteration in original) (quoting *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000)).

Here, the Steins, in contrast to Lopezes, entered into the Indemnification Agreement in their individual capacities, as is clearly indicated on the signature pages of the Agreement. D.E. 1 at 13-15. And although Defendants are correct that each of their jurisdictional contacts must be assessed individually, the Steins all retained the New Jersey counsel to negotiate and finalize the Indemnification Agreement in New Jersey on all their behalf.

The terms of the Indemnification Agreement also point to New Jersey. *Knierim*, 2008 WL 906244, at *7. One of the "whereas" clauses refers to the Letter, which memorialized an agreement about the sale of Natural Flavors, which operated in New Jersey, and was entered into in New Jersey at Defendants' behest. *See* D.E.1 at 10. Another refers to Natural Flavors's "business operations" which were centered in New Jersey. *Id.* In paragraph two of the resolutions, the Steins agreed, jointly and severally with Natural Flavors, to indemnify and defend Plaintiffs not just for the Delaware Action, but for

> (d) any and all claims by any other parties arising out of, directly or indirectly, the operations of NFI before the sale of its assets to Firmenich or subsequent to such sale, (e) the actions or omissions, intentional or otherwise, of the Stein Family Members and/or NFI's employees at any time, and/or (f) any claims by other parties arising out or relating to the purchase of goods or materials from NFI.

*Id.* at 11. Thus, by its own terms, the Indemnification Agreement refers not just to the Delaware Action, but to operations, actions, and omissions that took place in New Jersey, and to goods and materials produced in New Jersey.

In addition, Plaintiffs look to the future obligations that the Indemnification Agreement potentially foists on Defendants, arguing that "indemnitors should reasonably expect to be sued in the home state of the indemnitees." Opp'n at 17. They rely on *XL Specialty Insurance Company v. Westmoreland Coal Company*, No. 06-1234(GEB), 2006 WL 1783962 (D.N.J. June 26, 2006), and *Sprint Communications Company, L.P. v. Mediacom Communications Corp.*, No. 17-1736-RGA-SRF, 2020 WL 5606843 (D. Del. May 6, 2020), *report & recommendation adopted*, 2020 WL 5593933 (D. Del. Sept. 18, 2020).

In *Westmoreland Coal*, the district court found that an indemnification agreement supported the exercise of specific jurisdiction. 2006 WL 1783962, at *10. In that case, the plaintiffs issued a surety bond at the defendant's request. *Id.* at *1. The bond secured the

defendants' obligation to provide certain retirement benefits to its employees via a retirement plan. *Id.* The plaintiffs and defendants also executed an indemnity agreement whereby the defendants agreed to indemnify the plaintiff-as-surety if the defendants failed to perform and allowed the plaintiffs to cancel the bond without liability. *Id.* Around that time, the plaintiffs' headquarters moved from New York City to New Jersey. *Id.* at *2. At all times, the defendants were headquartered outside of New Jersey. *Id.* Thereafter, the plaintiffs canceled the bond, and the plan's trustees required the defendants to find a suitable replacement, or the trustees would pursue the plaintiffs for the bond's penal sum. *Id.* Ultimately, the trustees demanded the penal sum. *Id.* The plaintiffs invoked the indemnity agreement and sought a declaratory judgment. *Id.* at **2-3.

As to specific jurisdiction, the court in *Westmoreland Coal* acknowledged that the negotiations that led to the formation of the indemnity agreement did not occur in New Jersey. *Id.* at *9. However, the court read the indemnification contract as "a long-term agreement" that created ongoing commitments to the plaintiffs. *Id.* Therefore, in the court's view, the defendant should have expected to be sued in any state where the plaintiff chose to establish its headquarters. *Id.* The *Westmoreland Coal* court also found that personal jurisdiction was supported by other communications that the defendants directed to the plaintiffs in New Jersey and an in-person meetings in the state. *Id.* at **9-10.

In *Sprint*, the defendant, Mediacom, was accused of patent infringement by the plaintiff. 2020 WL 5606843, at *1. Mediacom, a Delaware corporation, had previously entered into an agreement called the "HPSLA" with another company called Metaswitch. *Id.* As part of the agreement, Metaswitch agreed to "'indemnify, defend and hold Mediacom ... harmless from and against any Losses from third party claims' for infringement allegations involving the Metaswitch Products or Services." *Id.* (alteration in original). Because the products that Sprint alleged violated

its patents used Metaswitch's products and services, Mediacom invoked the HPSLA and asked Metaswitch to indemnify them. *Id.* at *2. Metaswitch refused and Mediacom filed a third-party complaint against Metaswitch entities. *Id.*

One Metaswitch entity, Metaswitch UK, moved to dismiss the third-party complaint, arguing that it was not subject to jurisdiction in Delaware. *Id.* at *3. The *Sprint* court found that the HPSLA's indemnification provision supported specific jurisdiction. *Id.* at **4-5. The court reasoned that because "the duty to defend can only be performed in Delaware in this instance, Metaswitch UK is obligated to perform in Delaware, subjecting it to personal jurisdiction under subsection (c)(2) of the Delaware long-arm statute." *Id*. at *4. The court noted that the provision required Metaswitch not just to indemnify Mediacom but defend it—a broader duty than indemnity under New York law, which governed the HPSLA, and which was triggered by the initiation of a lawsuit instead of a finding of liability. *Id.* at *4 (citing *Burroughs Wellcome Co. v. Commercial Union Ins. Co*., 632 F. Supp. 1213, 1218 (S.D.N.Y. 1986); *Stoncor Grp., Inc. v. Peerless Ins. Co*., 322 F. Supp. 3d 505, 510 (S.D.N.Y. 2018)). The court in *Sprint* acknowledged that the HPSLA did not explicitly require Metaswitch to defend Mediacom in Delaware, but reasoned that because Mediacom is incorporated in Delaware, Delaware was a foreseeable forum. *Id.* at *5.[6]

The Court similarly finds that Plaintiffs have shown additional contacts with New Jersey through the Steins' continuing obligation to indemnify and defend Plaintiffs. The existence of continuing contacts weighs in favor specific jurisdiction. *Burger King*, 471 U.S. at 473, 475-76.

---

[6] As indicated above, the *Sprint* decision that Plaintiffs rely upon was a report and recommendation adopted by the district court. *Sprint Commc'ns Co. L.P. v. Mediacom Commc'ns Corp.*, No. 17-cv-1736-RGA, 2020 WL 5593933 (D. Del. Sept. 18, 2020) (adopting report and recommendation). The district court agreed that while Mediacom and Metaswitch's contract did not, standing alone, make Metaswitch subject to jurisdiction in Delaware, the obligation to defend did support specific personal jurisdiction. *Id.* at *2.

The Court agrees with the *Westmoreland Coal* and *Sprint* courts that by agreeing to indemnify Plaintiffs, who the Steins knew were domiciled in New Jersey, it was foreseeable to the Steins that they would be required to litigate in New Jersey. *See Ford Motor Co.*, 141 S. Ct. at 1025 ("[The contacts] must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or *entering a contractual relationship centered there*.") (alteration and emphasis added) (quoting *Walden*, 571 U.S. at 285.))

Because Defendants have minimum contacts with New Jersey and the Plaintiffs' claim arises out and relates to those contacts, the exercise of personal jurisdiction is presumptively reasonable. The Court next considers whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 316. A court considers the following factors: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotation marks and citation omitted). A defendant carries a heavy burden to defeat the presumption. *O'Connor*, 496 F.3d at 316. Defendants simply say that because, in their view, they do not have minimum contacts with New Jersey, they do not need to address the factors. D. Br. at 9. Plaintiffs, however, do assess the factors, Opp'n at 22-23, and Defendants address the factors in their reply, D. Reply at 18-19.

The Court finds that exercising jurisdiction would not offend traditional notions of fair play and substantial justice. Litigating in New Jersey will not impose a heavy burden on the Steins. Harris Stein is a resident of New York City and would be able to readily travel to Newark, New Jersey, where this Court sits. Additionally, throughout the Delaware Action and the negotiation

and execution of the Indemnification Agreement, Herb and Jason Stein were able to effectively participate in the litigation. Moreover, the Steins litigated the matter regarding the Manufacturing Agreement and the Temporary Staffing Agreement in New Jersey. Although the Steins assert that there are crucial witnesses and evidence outside New Jersey, the Steins do not identify the witnesses or evidence. The Court is confident in its ability to interpret New York contract law. Further, New Jersey has an interest in providing its citizens with the ability to conveniently redress their injuries. *McGee*, 355 U.S. at 223; *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 392 (D.N.J. 2016). Accordingly, the Court finds that exercising specific jurisdiction would not offend traditional notions of fair play and substantial justice.

For the foregoing reasons, the Court finds that it has specific personal jurisdiction over the Steins.

### B. General Jurisdiction

Plaintiffs alternatively argue that the Court has general personal jurisdiction over the Steins. Opp'n at 23-25. The Court disagrees. The Steins are being sued in their individual capacities. General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit[.]" *Walden*, 571 U.S. at 283 n.6. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler*, 571 U.S. 117 at 137 (quoting *Goodyear*, 564 U.S. at 924). The Supreme Court has acknowledged that in *Daimler*, it "le[ft] open 'the possibility that in an exceptional case' *a corporation* might also be 'at home' elsewhere[.]" *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Daimler*, 571 U.S. at 137) (emphasis added). But neither *Daimler* nor *Ford* said the same about individuals. *See Burnham*, 495 U.S. at 610 n.1 (indicating that the exception may only apply to corporations).

17

Plaintiffs cite *Weerahandi v. Shelesh* for the observation that the Supreme Court has not explicitly rejected the possibility that individuals' continuous and systematic contacts with another state could subject them to general jurisdiction in that state even if the individual is not domiciled there. No. 16-cv-006131, 2017 WL 4330365, at *3 (D.N.J. Sept. 29, 2017). However, the *Weerahandi* court acknowledged that the Supreme Court has only applied that theory of general jurisdiction to corporations. *Id.* Likewise, *Senne v. Kansas City Royals Baseball Club*, another case cited by Plaintiffs, acknowledged that the Supreme Court had left open the possibility that a party could be at home somewhere other than the traditional places designated by case law, but explained "that merely engaging in a 'substantial, continuous and systematic course of business' is not sufficient to establish general jurisdiction[.]" 105 F. Supp. 3d 981, 1018 (N.D. Cal. 2015). For general jurisdiction, the *Senne* court explained, the question is not whether a defendant has engaged in such conduct, but whether a defendant can be said to be at home in the forum state. *Id.*

There does not appear to be any binding authority that would subject an individual defendant to general jurisdiction in a state other than that in which he is domiciled, and cases within this Circuit have found that individuals are only subject to jurisdiction in their home states. *See, e.g.*, *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 490 (E.D. Pa. 2021); *Koch v. Pechota*, No. 3:16-cv-3637-BRM-LHG, 2017 WL 4316102, at *5 (D.N.J. Sept. 28, 2017).

Because the Steins are not domiciled in New Jersey, the Court does not have general jurisdiction over them.

### III. CONCLUSION

For the reasons stated above, Defendants' motion is denied. An appropriate Order accompanies this Opinion.

Dated: January 24, 2022

_____<br>John Michael Vazquez, U.S.D.J.